COUNTY OF WESTCHESTER, NEW YORK *v.*
TOWN OF GREENWICH ET AL.
(14710)

PETERS, C. J., CALLAHAN, BORDEN, KATZ and PALMER, Js.

Argued April 27—decision released July 28, 1993

*Karl S. Coplan,* pro hac vice, with whom were *John M. Callagy,* pro hac vice, *Elizabeth Tyler Grove, Stuart A. McKeever* and, on the brief, *Edward V. O'Hanlon, John E. Meerbergen, Joyce H. Young, Eve C. Gartner,* pro hac vice, *William Schwartz,* pro hac vice, *Chase Rogers* and *Rosalind Kelley,* for the appellants (defendant town of Greenwich et al.).

*Marguerite R. Wiess,* pro hac vice, with whom were *Russell J. Tenenzapf,* pro hac vice, and, on the brief, *Carol L. Van Scoyoc,* pro hac vice, and *Marilyn J. Slaatten,* pro hac vice, for the appellee (plaintiff).

*Karen P. Blado, J. E. Murdock III, Leonard A. Ceruzzi,* pro hac vice, and *Janet V. Lanigan,* pro hac vice, filed a brief for the National Business Aircraft Association et al. as amici curiae.

*William E. Hegarty* and *John B. Conway,* pro hac vice, filed a brief as amici curiae.

*Richard Blumenthal,* attorney general, and *Cornelius F. Tuohy,* assistant attorney general, filed a brief for the state of Connecticut as amicus curiae.

*John S. Yodice, Ronald D. Golden* and *Raymond C. Speciale,* pro hac vice, filed a brief for the Aircraft Owners and Pilots Association as amicus curiae.

PALMER, J. The dispositive question in this case is whether the plaintiff, the county of Westchester of the state of New York, has acquired an air navigation (avigation) easement[1] by prescription over certain Connecticut property under the laws of this state. This and other questions[2] come to this court upon our grant of certification from the United States Court of Appeals for the Second Circuit pursuant to General Statutes

---

[1] "An avigation easement is an easement of right to navigation in airspace over designated land." *Sticklen* v. *Kittle,* 168 W. Va. 147, 155, 287 S.E.2d 148 (1981).

[2] The Second Circuit Court of Appeals certified the following questions to this court:

"1. Can an avigation easement be acquired by prescription in the State of Connecticut?

"2. If under Connecticut law a clearance easement is distinct from an avigation easement, can a clearance easement be acquired by prescription in the State of Connecticut?

"3. Whether conceived as incident to an avigation easement or as constituting a separate clearance easement, would a clear zone include whatever air space is necessary to use the easement?" *Westchester* v. *Greenwich,* Docket No. 92-7698 (L) (2d Cir. January 6, 1993).

§ 51-199a and Practice Book § 4168.[3] *Westchester* v. *Greenwich,* Docket No. 92-7698 (L) (2d Cir. January 6, 1993). We conclude that, in the circumstances of this case, the plaintiff has not acquired an avigation easement by prescription.[4]

The record certified by the Second Circuit Court of Appeals provides the following facts.[5] The plaintiff is a New York municipal corporation that owns and operates the Westchester County Airport (airport). The airport is located in New York adjacent to the border between New York and Connecticut. The airport currently utilizes two runways. Runway 11/29 (runway) is an alternative runway that is normally used only if

---

[3] General Statutes § 51-199a provides in relevant part: "(a) This section may be cited as the Uniform Certification of Questions of Law Act.

"(b) The supreme court may answer questions of law certified to it by . . . a court of appeals of the United States . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of [the court of appeals of the United States] upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

"[Practice Book] Sec. 4168. [CERTIFIED QUESTIONS FROM FEDERAL COURTS]——IN GENERAL

"The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

[4] Our resolution of this issue makes it unnecessary for us to decide the second and third certified questions.

[5] See Practice Book § 4065 (c).

prevailing crosswinds make use of the main runway too dangerous for all but the largest aircraft or during an emergency. The runway abuts New York's border with Connecticut and its air approach zone is located almost entirely above Connecticut. The defendants[6] are Connecticut residents who own the land below the approach zone. Trees on their land have, over time, grown into that airspace.

Buffers of airspace known as clear zones surround the actual flight paths used by aircraft during take-offs and landings. The Federal Aviation Administration requires that these clear zones be kept free of obstructions so that aircraft may navigate safely during take-offs and landings. In 1989, due to penetration into the clear zone by certain of the defendants' growing trees, the Federal Aviation Administration, in effect, reduced the usable length of the runway by approximately 1350 feet.

As a consequence, in February, 1990, the plaintiff initiated an action for injunctive and declaratory relief in the United States District Court for the Southern District of New York claiming, inter alia, that the defendants' trees interfered with the use of the runway. *Westchester* v. *Greenwich,* 745 F. Sup. 951, 953 (S.D.N.Y. 1990).[7] The plaintiff claimed in the District

---

[6] The defendants originally included: the commissioner of transportation of the state of Connecticut; the town of Greenwich; Laurelton Nursing Home, Inc.; Greenwich King Street Associates II, L.P.; Mildred Tomonto; and the Convent of the Sacred Heart. See footnote 8.

[7] The District Court also noted "[the County's] additional motivation behind the . . . present litigation. The County has planned to expand the airport by adding an additional runway and a new terminal. To be eligible for federal grants for airport development projects under the federal-aid Airport Program, the County must own, acquire, or agree to acquire control over, or a property interest in, runway clear zones that the Administrator considers adequate. . . . An airport possesses a sufficient property interest if it has an easement . . . giving it enough control to rid the clear zone of all obstructions . . . and to prevent the creation of future obstructions; together with the right of entrance and exit for those purposes, to

Court that "the use of the airspace for approximately forty years has given [it] a prescriptive easement in this flight zone"; id., 954; and sought an injunction authorizing it to top or cut down, as necessary, trees that had penetrated into that zone and had thereby interfered with the plaintiff's claimed easement.[8]

Both the plaintiff and the defendants subsequently filed motions for summary judgment. *Westchester* v. *Greenwich,* 793 F. Sup. 1195 (S.D.N.Y. 1992). The District Court, acknowledging that the courts of this state had never determined whether avigation and clearance easements[9] may be acquired by prescription, concluded nevertheless that the plaintiff had acquired such easements; id., 1205, 1207; and granted the plaintiff "a limited injunction to cut back, at its own expense, the trees occupying runway 11/29's clear zones . . . ." Id., 1222. The court further held that "[t]o the extent, certain trees cannot be simply trimmed back without destroying them, the County shall be permitted to remove them completely but must compensate defendants for their loss." Id. The defendants appealed to the

ensure the safe and unrestricted passage of aircraft in and over the area." (Citations omitted; internal quotation marks omitted.) *Westchester* v. *Greenwich,* 793 F. Sup. 1195, 1203 n.4 (S.D.N.Y. 1992).

[8] The District Court subsequently dismissed the plaintiff's state law cause of action against the commissioner of transportation concluding that the eleventh amendment to the United States constitution prohibited such a suit. *Westchester* v. *Greenwich,* 745 F. Sup. 951, 957 (S.D.N.Y. 1990).

[9] The District Court separated the plaintiff's claimed right to remove certain of the defendants' trees from the clear zone into two distinct easements: "an avigation or flight easement giving [the plaintiff] a right to fly through the airspace above [the] defendants' properties"; and "a clearance easement providing [the plaintiff] the right to cut down those trees obstructing the approach to runway 11/29 and its clear zones." *Westchester* v. *Greenwich,* 793 F. Sup. 1195, 1204 (S.D.N.Y. 1992). The court explained that "[t]he function of the clearance easement . . . is: 'to increase the margin of safety for flying by assuring that the glide zone will be free from natural growth or man-made obstructions and the pilot's vision unobscured above a designated altitude.' " Id., quoting *Oakland* v. *Nutter,* 13 Cal. App. 3d 752, 763 n.13, 92 Cal. Rptr. 347 (1970).

United States Court of Appeals for the Second Circuit. The Court of Appeals subsequently certified the present questions to this court.

Prescriptive easements are recognized in this state. General Statutes § 47-37;[10] *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation,* 190 Conn. 163, 459 A.2d 1021 (1983). "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised." *Whiting* v. *Gaylord,* 66 Conn. 337, 344, 34 A. 85 (1895). In order to prove such adverse use, the party claiming to have acquired an easement by prescription must demonstrate that the use of the property has been "open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." *Andrzejczyk* v. *Advo System, Inc.,* 146 Conn. 428, 431, 151 A.2d 881 (1959); *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation,* supra, 168; *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 515, 227 A.2d 83 (1967). There can be no claim of right unless the use is "unaccompanied by any recognition of [the right of the servient tenement] to stop such use. A use by express or implied permission or license cannot ripen into an easement by prescription." *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22 (1936); *Klar Crest Realty, Inc.* v. *Rajon Realty Corporation,* supra. Connecticut law refrains from extinguishing or impairing property rights by prescription unless the party claiming to have acquired an easement by prescription has met each of these stringent conditions.

Although these principles are firmly rooted in our statutory and common law, the issue of whether an avigation easement may be acquired by prescription is one

[10] "[General Statutes] Sec. 47-37. WHEN ACQUIRED BY ADVERSE USE. No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

of first impression in this state. At least two other courts have held that an avigation easement may not be acquired by prescription. See *Hinman* v. *Pacific Air Transport,* 84 F.2d 755 (9th Cir. 1936), cert. denied, 300 U.S. 654, 57 S. Ct. 431, 81 L. Ed. 865 (1937); *Sticklen* v. *Kittle,* 168 W. Va. 147, 287 S.E.2d 148 (1981). Although we are not aware of any case in which a prescriptive avigation easement has been upheld, several jurisdictions have suggested that such an easement may be acquired under appropriate circumstances. See, e.g., *Drennen* v. *Ventura,* 38 Cal. App. 3d 84, 112 Cal. Rptr. 907 (1974); *Shipp* v. *Louisville & Jefferson County Air Board,* 431 S.W.2d 867 (Ky. 1968), cert. denied, 393 U.S. 1088, 89 S. Ct. 880, 21 L. Ed. 2d 782 (1969); *Petersen* v. *Seattle,* 94 Wash. 2d 479, 618 P.2d 67 (1980). Because we conclude that the plaintiff did not acquire a prescriptive avigation easement in the circumstances presented, we need not decide whether an avigation easement may ever be acquired by prescription in this state.

As we have stated, an easement may not be acquired by prescription unless the use of the property is "such as to give a right of action in favor of the party against whom [the adverse use] has been exercised." *Whiting* v. *Gaylord,* supra, 344. For the plaintiff to have acquired a prescriptive avigation easement, therefore, the defendants must have had a right of action against the plaintiff during a fifteen year period when the plaintiff's use of the airspace over the defendants' properties was "open, visible, continuous and uninterrupted." The defendants, however, had no right of action against the plaintiff to stop the overflights because federal law prohibits landowners from obtaining injunctive relief against aircraft using the navigable airspace of the United States.[11] *United States* v. *New Haven,* 367 F.

---

[11] Section 1304 of title 49 of the United States Code provides in relevant part: "There is hereby recognized and declared to exist in behalf of any

Sup. 1338, 1341 (D. Conn. 1973), aff'd, 496 F.2d 452 (2d Cir.), cert. denied, 419 U.S. 958, 95 S. Ct. 218, 42 L. Ed. 2d 174 (1974); *East Haven* v. *Eastern Airlines, Inc.*, 331 F. Sup. 16, 32–33 (D. Conn. 1971), aff'd, 470 F.2d 148 (2d Cir. 1972), cert. denied, 411 U.S. 965, 93 S. Ct. 2144, 36 L. Ed. 2d 685 (1973). In these circumstances, the defendants could not have reclaimed the exclusive use of the airspace above their properties and, therefore, the use of that airspace by the plaintiff can not be considered adverse.[12]

The plaintiff argued, and the District Court agreed, that the right of the defendants to seek compensation from the plaintiff for aircraft flights "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land";[13] *United States* v. *Causby,* 328 U.S. 256, 266, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946); *Griggs* v. *Allegheny,* 369 U.S. 84, 88–89, 82 S. Ct. 531, 7 L. Ed. 2d 585 (1962); constituted a right of action[14] sufficient to satisfy the requirements of our

citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." "Navigable airspace" is defined as "the minimum altitudes of flight prescribed by regulations . . . [including] airspace needed to insure safety in take-off and landing of aircraft." 49 U.S.C. § 1301 (29); see *United States* v. *Causby,* 328 U.S. 256, 266, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946).

[12] This conclusion also follows from application to the facts of this case of the correlative proposition that the use of property by permission or license cannot ripen into an easement by prescription. That the use of the airspace is authorized by federal law rather than by the defendants does not alter our conclusion. See, e.g., *Pro-Fac Cooperative, Inc.* v. *Baltimore & Ohio R. Co.,* 36 App. Div. 2d 441, 443–44, 321 N.Y.S.2d 208 (1971) (during period of time that use of property is authorized by state statute, such use cannot ripen into prescriptive easement).

[13] The Federal Aviation Administration defined approach path lies at its lowest point within thirty-one feet of the surface of Tomonto's property and seventeen feet above the land of Greenwich King Street Associates II, L.P.

[14] In *United States* v. *Causby,* 328 U.S. 256, 264–65, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946), the United States Supreme Court held that a private landowner may have a takings claim under the fifth and fourteenth amendments to the United States constitution for damages caused by flights of

law of prescription. We disagree. The certified record does not include any facts to suggest, and the District Court did not find, that the overflights had, in any manner, harmed the defendants' trees or otherwise interfered with the use and enjoyment of the defendants' properties. Nor did the defendants so claim. The defendants cannot have been required to have sought compensatory relief in order to have forestalled the plaintiff's acquisition of a prescriptive avigation easement when the overflights had never interfered with the defendants' use and enjoyment of their properties. Although we doubt that we would ever require a landowner to assert a constitutional takings claim in order to avoid the acquisition of a prescriptive avigation easement, we are satisfied that these defendants were not obliged to do so.[15]

The first certified question is answered: No, not in these circumstances; because the plaintiff has failed to show that its use was adverse as required by Connecticut law.

No costs will be taxed to either party.

In this opinion the other justices concurred.

---

aircraft over the property. The court recognized, however, that "[t]he airplane is part of the modern environment of life and the inconveniences which it causes are normally not compensable under the Fifth Amendment. The airspace, apart from the immediate reaches above the land, is part of the public domain"; id., 266; and flights over private land, therefore, "are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." Id.

[15] The town of Greenwich also argues that the plaintiff's claim to have acquired a prescriptive avigation easement as to the town fails because an easement may not be acquired over a municipality's right-of-way. Our resolution of the matter on other grounds makes it unnecessary for us to consider this argument.